# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

S.K. and Z.K. minors, by and through their                           Civil No. 05-1226 (DWF/SRN)
parents and next friends, L.K. and T.K.,

                              Plaintiffs,

                                                                         **MEMORANDUM**
v.                                                                   **OPINION AND ORDER**

Anoka-Hennepin Independent School
District No. 11; Michael Sullivan, Scott Wenzel,
Tom Halderman, Daniel Cook, John Hoffman, and
Jerry Newton, individually and in their official capacities
as members of the Anoka-Hennepin School Board;
Mary Wolverton, individually and in her official capacity
as Principal of Sandburg Middle School; Annette Ziegler,
Deb Shepard, David Law, and Douglas Hodson,
individually and in their official capacities as
Assistant Principals of Sandburg Middle School;
Roger Giroux, Superintendent, Anoka-Hennepin
Independent School District No. 11,

                              Defendants.

_____

Alfred M. Stanbury, Esq., Stanbury Law Firm P.A., counsel for Plaintiffs.

Lawrence J. Hayes, Jr., Esq., Knutson Flynn & Deans, P.A., counsel for Defendants.

_____


## Introduction

        The above-entitled matter came before the undersigned United States District Court Judge on

October 14, 2005, pursuant to a Motion to Dismiss brought by Defendants Anoka-Hennepin

Independent School District No. 11; Michael Sullivan, Scott Wenzel, Tom Halderman, Daniel Cook,

John Hoffman, and Jerry Newton, individually and in their official capacities as members of the Anoka-

Hennepin School Board; Mary Wolverton, individually and in her official capacity as Principal of

Sandburg Middle School; Annette Ziegler, Deb Shepard, David Law, and Douglas Hodson, individually

and in their official capacities as Assistant Principals of Sandburg Middle School; and Roger Giroux,

Superintendent, Anoka-Hennepin Independent School District No. 11 ("Defendants").  For the reasons

set forth below, Defendants' motion is granted.

## Background

Plaintiffs S.K. and Z.K., and their parents, L.K. and T.K., (collectively "Plaintiffs") brought this

suit in response to the Anoka-Hennepin School Board's (the "School Board") decision to expel S.K.

and Z.K. for their involvement in shooting another boy in the back with a BB gun.  (Complaint at ¶ 6.)

The incident occurred before school at about 7:00 a.m. on May 11, 2004, on Plaintiffs' property.  (*Id.*)

 At the time of the incident, S.K. was a 12-year-old sixth grader and Z.K. was a 14-year-old eighth

grader at Sandburg Middle School.  (*Id.* at ¶ 11.)  Later that day an unidentified student at Sandburg

Middle School told school officials that a 12yearold Sandburg student (the "victim") was shot in the

back with a BB gun.  (*Id.* at ¶ 18.)  Assistant Principals Law, Shepard, and Ziegler questioned S.K.

and Z.K. about the incident.  (*Id.*)  S.K. and Z.K. indicated that the incident occurred in their yard, and

not at the bus stop.  (*Id.*)

Following the incident, Assistant Principal Shepard issued a "Notice of Suspension" to S.K.,

describing the grounds for suspension as follows, "Weapons.  The testimony received was: Before

school today [S.K.], his brother and another 8th grade boy [B.H.] decided to shoot another boy at the

bus stop.  The other 8th grade boy hid while the 6th grade victim walked over."  (*Id.* at ¶ 19.)  Assistant

Principal Shepard recommended that the School Board expel S.K. for the remainder of the 2003-04

school year.  (*Id.*)  Assistant Principal Ziegler issued a "Notice of Suspension" to Z.K., describing the grounds for suspension as follows, "Weapons—shot BB gun at another student The [sic] testimony received was:  [Z.K.] and [B.H.] took a BB gun and shot it at a 6th grade student at the bus stop.  Two boys called the 6th grade student over, while one 8th grade student shot at him and then Z.K. took a shot at him."  (*Id.*)  Assistant Principal Ziegler recommended that the School Board expel Z.K. for one calendar year under probationary conditions.  (*Id.*)

On May 12, 2004, S.K. and Z.K.'s mother asked Assistant Principal Hodson if they should get a lawyer.  (*Id.* at ¶ 22.)  Hodson allegedly indicated, "if they knew or had a family friend who was a lawyer, sure . . . [but Hodson told S.K. and Z.K.'s mother] not to spend a lot of money on a lawyer because that would probably be a waste since they probably would not win against District 11."  (*Id.*)  Based on Assistant Principal Hodson's advice, S.K. and Z.K.'s parents did not consult a lawyer.  (*Id.*)  Plaintiffs also signed waivers of their right to an expulsion hearing.  The School Board did not advise Plaintiffs that free or low-cost legal assistance may be available and that a legal assistance resource list is available from the Minnesota Department of Education ("Department of Education"), as required by Minn. Stat. § 121A.47, subds. 1, 2 (2004).  (*Id.* at ¶ 25.)

The School Board met on May 24, 2004, to determine whether to expel S.K. and Z.K.  During the meeting, Assistant Principal Hodson allegedly told Plaintiffs "this looks good, they will just expel the boys until the end of the 2004 school year."  (*Id.* at ¶ 31.)  Later that evening, however, Assistant Principal Hodson phoned Plaintiffs and told them that the School Board expelled  S.K. and Z.K. for a year.  (*Id.*)  The School Board expelled S.K. from district schools until May 10, 2005, but allowed S.K. to attend under probationary conditions beginning November 15, 2004.  (*Id.* at ¶ 7.)  Z.K. was

3

also expelled from district schools until May 10, 2005, but allowed to attend under probationary

conditions beginning April 11, 2005.  (*Id.*)  Assistant Principal Hodson allegedly told Plaintiffs that he

was "really sorry he had gotten their hopes up and said that, after they left, things at the School Board

session took a 180 degree turn." (*Id.* at 31.)  The School Board based the expulsion decisions on its

determination that S.K. and Z.K. had violated Minn. Stat. § 121A.45, subd. 2 (2004), of the Pupil Fair

Dismissal Act ("Grounds for Dismissal Policy") and the Weapons section of the School Board's

Student Discipline Policy ("Weapons Policy").

On June 29, 2004, Anoka County charged S.K. and Z.K. with felony second-degree assault

for their participation in the incident.  (*Id.* at ¶ 35.)  On September 22, 2004, S.K. and Z.K. pleaded

guilty to the charges.  (*Id.* at ¶ 38.)  The court granted a stay of adjudication and sentenced S.K. and

Z.K. to perform 30 hours of community service.  (*Id.*)

Following their expulsions, Plaintiffs retained counsel and appealed the School Board's decision

to the acting commissioner of the Department of Education.  (*Id.* at ¶ 8.)  On July 12, 2004, the

Department of Education affirmed the School Board's decisions.  (*Id.*)  Plaintiffs then appealed to the

Minnesota Court of Appeals, which reversed the School Board's decision to expel S.K. and Z.K.  *See*

*In re Z.K. v. Anoka Hennepin Indep. Sch. Dist.*, 695 N.W.2d 656 (Minn. Ct. App. 2005).  The

Court of Appeals held that the Plaintiffs' waivers of their right to an expulsion hearing were not knowing

and intelligent and, thus, were invalid because the School Board failed to advise Plaintiffs of the

availability of free or low-cost legal assistance and the availability of a legal assistance resource list from

the Department of Education in violation of Minn. Stat. § 121A.47 (2004).  *Id.* at 663.

On remand, the Department of Education directed the School Board to determine whether it wished to proceed with the expulsions or expunge the prior expulsions from S.K.'s and Z.K.'s school records. (Complaint at ¶ 10.) On June 6, 2005, the School Board sent notice of its decision to proceed with S.K.'s and Z.K.'s expulsions and scheduled hearings for June 23, 2005. (*Id.*) On June 22, 2005, one day before the scheduled expulsion hearings, Plaintiffs filed this suit.

In their Complaint (the "Complaint"), Plaintiffs allege that: (1) Defendants acted under color of law in violation of 42 U.S.C. § 1983 ("Count I"), (2) Defendant Principal Wolverton failed to exercise reasonable care regarding the hiring, training, supervision, and retention of certain school employees ("Count II"), and (3) the Grounds for Dismissal Policy and Weapons Policy are unconstitutionally vague under the Minnesota and U.S. Constitutions ("Count III").

Defendants move to dismiss Count I of the Complaint on the grounds that Plaintiffs' procedural and substantive due process claims are legally inadequate, and Count III on the ground that Plaintiff is precluded from challenging the School Board's jurisdiction over the incident.

## Discussion

### I.      Standard of Review

Defendants move for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) will not be granted lightly. *Wheeler v. St. Louis Southwestern Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996), citing *Bowe v. Northwest Airlines, Inc.*, 974 F.2d 101, 103 (8th Cir. 1992), *cert. denied*, 507 U.S. 992 (1993). Dismissal is proper, however, where an attack on the complaint's alleged basis for subject matter

5

jurisdiction reveals that there is no actual basis for jurisdiction.  *Wheeler*, 90 F.3d at 329, citing *Bowe*, 974 F.2d at 103.

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments.  *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  In a facial challenge to jurisdiction, the court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss.  *See Osborn*, 918 F.2d at 729 n.6.  In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6).  *See Titus*, 4 F.3d 590 at 593; *Osborn*, 918 F.2d at 729 n.6.  "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."  *Osborn*, 918 F.2d at 730.  Defendants make a factual challenge to this Court's jurisdiction, asserting that, on the facts of this case, Plaintiffs have not exhausted their administrative remedies.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint shall be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would demonstrate an entitlement to relief.  *Springdale Educ. Assn. v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 545 (8th Cir. 1997), citing *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982).  Dismissal is proper only when the complaint on its face reveals "some insuperable bar to relief."  *Duffy v. Landberg*, 133

F.3d 1120, 1122 (8th Cir. 1998), quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995).  The allegations in the complaint must be treated as true and must be construed in the plaintiff's favor.  *Duffy*, 133 F.3d at 1122.  However, conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.  *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998).

## II.   Procedural Due Process

In Count I of their Complaint, Plaintiffs allege that Defendants violated 42 U.S.C. § 1983 by depriving the Plaintiffs of due process of law.  42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

A school district is considered a "person" for purposes of § 1983 liability.  *See Stephenson v. Davenport Community Sch. Dist.*, 110 F.3d 1303, 1306 n.2 (8th Cir. 1997).

Defendants contend that this Court lacks jurisdiction over Plaintiffs' procedural due process claim because Plaintiffs have failed to exhaust their administrative remedies.   Plaintiffs respond that administrative remedies need not be exhausted before commencing a section 1983 action, and cite *Patsy v. Board of Regents*, 457 U.S. 496, 500 (1982), in support of their position. Plaintiffs also assert that they exhausted their administrative remedies when the Minnesota Court of Appeals vacated the School Board's expulsion decisions on May 17, 2005.  The Court agrees with Plaintiffs' assertion. "Generally, a plaintiff need not exhaust his administrative remedies before bringing a section 1983 claim in federal district court."  *Plough v. West Des Moines Community Sch. Dist.*, 70 F.3d 512, 515 n.5

7

(8th Cir. 1995) (citing *Patsy*, 457 U.S. at 498).  In any event, the Court finds that Plaintiffs have exhausted their administrative remedies with respect to their procedural due process claim.  Plaintiffs' administrative remedies were exhausted when the Minnesota Court of Appeals reversed the School Board's decision to expel S.K. and Z.K. because Plaintiffs' waivers to an expulsion hearing were invalid.  *See Z.K.*, 695 N.W.2d at 664.

Additionally, Defendants assert that Plaintiffs cannot show substantial prejudice because S.K. and Z.K. admitted to engaging in the misconduct that formed the basis of their expulsions.  Without a showing of substantial prejudice, according to Defendants, Plaintiffs cannot establish a denial of procedural due process.  Plaintiffs, however, contend that they have demonstrated substantial prejudice because they were deprived of their fundamental right to an education.

The Court finds that Plaintiffs have not demonstrated substantial prejudice.  A party must show substantial prejudice in order to establish a denial of procedural due process.  *See Watson v. Beckel*, 242 F.3d 1237, 1242 (10th Cir. 2001); *Davis v. Mann*, 882 F.2d 967, 975 (5th Cir. 1989); *Keough v. Tate County Bd. of Educ.*, 748 F.2d 1077, 1083 (5th Cir. 1984).  In *Keough*, the Fifth Circuit held that whether the plaintiff student admitted the charges used to suspend him from school was relevant in establishing substantial prejudice or harm.  *Id.*  Because Keough admitted cursing, leaving school without permission, and fighting, the Court held that "[c]learly there was substantial evidence to support the district court's finding that Keough admitted the charges and therefore his suspension did not result from a procedural due process deprivation."  *Id.*

8

Like the plaintiff in *Keough*, S.K. and Z.K. admitted to engaging in the misconduct that formed the basis of their expulsions when they pleaded guilty to felony second-degree assault. Accordingly, the Court finds that Plaintiffs cannot demonstrate substantial prejudice and, therefore, have failed to establish a denial of procedural due process.

## III.    Substantive Due Process

Defendants assert that Plaintiffs have failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) for violation of substantive due process.  To establish a violation of their substantive due process rights, Plaintiffs would have to show that the School Board's conduct was arbitrary and capricious. *Peterson v. Indep. Sch. Dist.*, 999 F. Supp. 665, 673 (D. Minn. 1998) (citing *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990).  "Conduct is arbitrary and capricious only if there is no rational basis for a decision or a decision is motivated by bad faith or ill-will." *Peterson*, 999 F. Supp. at 673.

According to Defendants, because their alleged  misconduct was not arbitrary and capricious, Plaintiffs have failed to state a claim upon which relief may be granted.  Defendants rely on *Peterson*, in which the Court found that the plaintiff failed to identify any conduct on the part of the defendants that constituted a violation of plaintiffs' substantive due process rights.

Plaintiffs contend that Defendants' reliance on *Peterson* is misplaced.[1]  Plaintiffs point out that, in *Peterson*, the plaintiffs were only expelled for five days and prohibited from participating in extra-

---

[1]    Additionally, Plaintiffs allege that they do not have to demonstrate that the Defendants' conduct was arbitrary and capricious in order to state a claim for a violation of substantive due process. Plaintiffs cite no authority for their position, and the Court finds this argument unavailing.

curricular activities for 26 days, whereas, here, the Plaintiffs were expelled for a year.  Further, Plaintiffs assert that they were "deceived and intimidated into waiving a hearing."  (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Memorandum") at 20.)

The Court finds that Plaintiffs have failed to allege facts that would constitute a violation of their substantive due process rights.  In *Peterson*, the school board expelled the plaintiff from school for five days and from extra-curricular activities for 26 days for riding in a truck on a school parking lot in which he knew a BB gun was present.  *Peterson*, 999 F. Supp. at 668–69.  Peterson filed a notice of appeal with the Department of Education, challenging the school board's action on both procedural and due process grounds.  *Id.* at 669.  The Department of Education reversed the school board's expulsion decision on the basis that "substantial evidence on the record does not support a conclusion that student's conduct violated reasonable school board regulations which were sufficiently clear and definite as to provide notice to the student that he must conform his conduct to its requirements."  *Id.* (citing the Findings of Fact, Conclusions of Law, Discussion, and Decision and Order of Commissioner of Education at 8).  Peterson then brought a section 1983 action against the school district and its superintendent, alleging that his procedural and substantive due process rights were violated.

While Peterson was only expelled from school for five days and from extra-curricular activities for 26 days, his violation of school policy was less egregious than S.K. and Z.K.'s violation of school policy in this case.  Here, S.K. and Z.K. were involved in shooting another student with a BB gun.  Though S.K. and Z.K. were expelled from school for a year, the Court does not find that the School Board's decision was arbitrary and capricious given the serious nature of the incident in this case.  Participating in shooting another student with a BB gun warrants a more severe punishment than merely

10

riding in a truck in which a BB gun was present. The Court's conclusion on this point is bolstered by the

fact that S.K. and Z.K. pleaded guilty to second-degree felony assault for their involvement in the

shooting incident.

The *Peterson* decision is also instructive because, in that case, the school board's expulsion

decision was reversed.  In *Peterson*, the Department of Education reversed the expulsion decision, as

did the Minnesota Court of Appeals in this case.  Nonetheless, the *Peterson* Court found that the

Department of Education's decision to reverse did not mean that the school board's actions were

"egregious, irrational, or motivated by ill-will."  *Id.* at 673.  Likewise, the Court finds that the Minnesota

Court of Appeals' conclusion that Plaintiffs' waivers were invalid because the School Board failed to

specifically advise them of their right to free or low-cost legal assistance under the Pupil Fair Dismissal

Act does not demonstrate that the Defendants' actions were egregious, irrational, or motivated by ill-

will.  *See Z.K.*, 695 N.W.2d at 664.  Thus, the Court finds that Plaintiffs have failed to plead facts that

would demonstrate that Defendants' conduct was arbitrary and capricious.

## IV.     School Board's Jurisdiction Over Incident

In Count III of their Complaint, Plaintiffs allege that the Grounds for Dismissal Policy, Minn.

Stat. § 121A.45, subd. 2 (2004), and the Weapons Policy are unconstitutionally vague.[2]  Plaintiffs

allege that the School Board's Weapons Policy does not provide "even minimal guidance as to the

School District's authority to discipline a student for conduct occurring outside of school and school

---

[2]     In their Complaint, Plaintiffs also allege that Minn. Stat. § 121A.45, subd. 2 (2004), and the
School District's Weapons Policy are overbroad and void for vagueness.  In their Memorandum of
Law in Opposition to Defendants' Motion to Dismiss, however, Plaintiffs withdrew their overbreadth
claims.  (*See* Plaintiffs' Memorandum at 25.)

11

hours and the School District's jurisdiction to discipline a student for conduct occurring outside of school property or a school zone." (*See* Complaint at ¶ 56.) Plaintiffs indicate that they are not making facial challenges to these policies. (Plaintiffs' Memorandum at 28.)

Defendants allege that Plaintiffs are collaterally estopped from challenging the School Board's jurisdiction over the incident because the Minnesota Court of Appeals affirmed the Department of Education's determination that the School Board had jurisdiction over the incident. The doctrine of collateral estoppel, or issue preclusion, prevents the relitigation of an issue of ultimate fact determined by a valid and final judgment in another lawsuit involving a party to the prior litigation. *Coates v. Kelley*, 957 F. Supp. 1080, 1083 (E.D. Ark. 1997). Collateral estoppel may be applied where: (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982).

Defendants contend that the requisite factors for applying collateral estoppel are satisfied. Plaintiffs contend that the doctrine of collateral estoppel does not preclude them from contesting the constitutionality of the School District's Weapons Policy because (1) the constitutionality of the School District's Weapons Policy is not "identical" to any issue raised in the administrative proceedings, and (2) the Minnesota Court of Appeals' affirmance of the Department of Education's finding that the School District had jurisdiction over the incident was not necessary or essential to the decision to reverse the School Board's expulsion decisions.

The Court finds that collateral estoppel precludes Plaintiffs from challenging the School Board's jurisdiction over the incident.  The Plaintiffs challenged the School Board's jurisdiction over the incident to the Court of Appeals.  *Z.K.*, 695 N.W.2d at 663–64.  Plaintiffs contended that because the incident occurred "near" the bus stop, rather than "at" the bus stop, the incident was outside the scope of the Weapons Policy.  *Id.*  The Court of Appeals concluded that the School Board had jurisdiction over the incident, stating:

> The victim was lured away from the bus stop under the guise of playing basketball.  The victim was then shot with a BB gun.  [S.K. and Z.K.] were involved in the incident, and all individuals involved in the matter were students at Sandburg Middle School.  Under the specific facts of this case, the School District had discretion to apply its disciplinary policy to the actions of S.K. and Z.K. in order to protect the general safety and welfare of its students.

*Id.* at 664.  Here, Plaintiffs raise an identical issue—lack of jurisdiction.  While the Plaintiffs challenge the constitutionality of the policies as applied to S.K. and Z.K., they essentially raise a challenge to the School Board's jurisdiction over the incident.

The Court also finds no merit in Plaintiffs' assertion that the Minnesota Court of Appeal's finding of jurisdiction was not necessary to its decision to reverse the School Board's expulsion decisions.  The Court of Appeals first had to determine whether the School Board had jurisdiction over the incident in order to address the waiver issue.  Therefore, the finding of jurisdiction was necessary to its decision.  The Court further determines that Plaintiffs were a party to the prior adjudication and that they were given a full and fair opportunity to be heard on the adjudicated issue.  Thus, the Court finds that Plaintiffs are collaterally estopped from raising the issue of jurisdiction.

13

Nonetheless, the Court will address the merits of Plaintiffs' challenge to the School Board's

jurisdiction.  A regulation is impermissibly vague if it "fails to establish standards for the [enforcement

authorities] and public that are sufficient to guard against the arbitrary deprivation of liberty interests."

*See City of Chicago v. Morales*, 527 U.S. 41, 52 (1999).  "To withstand a facial vagueness challenge,

an enactment must define the proscribed behavior with sufficient particularity to provide a person of

ordinary intelligence with reasonable notice of prohibited conduct and to encourage non-arbitrary

enforcement of the provision."  *Woodis v. Westark Cmty. College*, 160 F.3d 435, 438 (8th Cir.

1998).  In an "as applied" analysis, the court must determine whether the enactment was sufficiently

precise to notify the plaintiff that his or her conduct constituted a violation of the enactment.  *Id.* at 439.

Minn. Stat. § 121A.45, subd. 2, provides:

**Grounds for dismissal.**  A pupil may be dismissed on any of the following grounds:

(a)  willful violation of any reasonable school board regulation.  Such regulation must be
clear and definite to provide notice to pupils that they must conform their conduct to
its requirements;

(b)  willful conduct that significantly disrupts the rights of others to an education or the
ability of school personnel to perform their duties or school sponsored
extracurricular activities; or

(c)  willful conduct that endangers the pupil or other pupils, or surrounding persons,
including school district employees, or property of the school.

The School Board's Weapons Policy provides, in part:

It is the policy of the Anoka-Hennepin School District to maintain a positive, safe and
secure learning and working environment.  Therefore, the District will not tolerate
weapons as defined in this policy at any time on school property or in the school zone,
including School District owned buildings and grounds; leased or rented facilities; school
sponsored activities; field trips; school buses and other school vehicles, and school bus
loading and unloading areas.  Students and visitors may not possess, store, handle,

transmit, or use any weapons in any of the school environments listed above.  Any student found to possess, store, handle, transmit, or use any weapon before, during, or after school hours would be subject to administrative and/or legal action.

(Complaint at Ex. 4.)  The "school zone" is defined as "[t]he area surrounding school property to a distance of 300 feet, or one city block, whichever is greater beyond school property."  *Id.*

The Court finds that the School Board's policies placed S.K. and Z.K. on sufficient notice that their behavior on the day in question violated such policies.  The Weapons Policy provides that the School Board will not tolerate weapons on school property or in the school zone, which included school bus and loading and unloading areas.  Further, the Grounds for Dismissal Policy indicates that a pupil may be dismissed for willfully violating any reasonable School Board regulation.  S.K. and Z.K. called the victim away from the bus stop and over to their house, where they participated in shooting him in the back with a BB gun.  *Z.K.*, 695 N.W.2d at 664.  Shortly after the incident, the boys boarded the bus and went to school.  *Id.* at 659.  S.K. and Z.K. engaged in conduct clearly proscribed by the School Board's policies.  The Court agrees with the Minnesota Court of Appeals that "the School District had discretion to apply its disciplinary policy to the actions of S.K. and Z.K. in order to protect the general safety and welfare of its students."  *Z.K.*, 695 N.W.2d at 664.

Accordingly, Plaintiffs' cannot maintain their "as applied" vagueness challenges to the School Board's Weapons and Grounds for Dismissal Policies.

## V.      Plaintiffs' State Law Claim

Under 28 U.S.C. § 1367(a), a federal court may assert supplemental jurisdiction over state law claims when a federal claim is properly before the court.  However, when all federal claims have been dismissed, the court has discretion to dismiss the remaining state claims.  *See* 28 U.S.C. § 1367(c)(3);

*Willman v. Heartland Hosp. E.*, 34 F.3d 605, 613 (8th Cir. 1994).  Section 1367(c)(3) specifically

states that the Court "may decline to exercise supplemental jurisdiction over a claim . . . if the district

court has dismissed all claims over which it has original jurisdiction."  The Court's discretion as to

whether to exercise jurisdiction over these remaining claims should be informed by principles of judicial

economy, convenience, fairness, and comity.  *See United Mine Workers of America v. Gibbs*, 383

U.S. 715, 726 (1966).

Here, the Court has dismissed Plaintiffs' federal claims, and only Plaintiffs' state law claim,

negligent training and supervision, under Count II remains.  The Court determines that it will not exercise

its supplemental jurisdiction in this instance for the sake of judicial economy.  The remaining claim stated

in the Complaint is dismissed without prejudice.

## VI.      Sanctions

Plaintiffs brought a Motion for Sanctions, arguing that Defendants' Motion to Dismiss under

Federal Rule of Civil Procedure 12(b)(1) violates Federal Rule of Civil Procedure 11(b)(1) because the

Motion has allegedly been presented to harass or to cause unnecessary delay and because its legal

contentions are not warranted by existing law.  The Court finds no need to address Plaintiffs' Motion

given the outcome of Defendants' Motion to Dismiss.

For the reasons stated, **IT IS HEREBY ORDERED THAT:**

1.      Defendants' Motion to Dismiss (Doc. No. 19) is **GRANTED** on Counts One and

Three of the Complaint;

a.      Counts One and Three of the Complaint are **DISMISSED WITH**

**PREJUDICE**;

b.      Count Two of the Complaint is **DISMISSED WITHOUT**

**PREJUDICE**.

2.      Plaintiffs' Motion for Sanctions (Doc. No. 36) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  November 10, 2005          s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   Judge of United States District Court

17